# United States Court of Appeals for the Federal Circuit

---

**IN RE: GOOGLE LLC,**
*Petitioner*

---

2023-101

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:21-cv-00985-ADA, Judge Alan D. Albright.

---

**ON PETITION**

---

STEVEN A. HIRSCH, KEKER, Van Nest & Peters LLP, San Francisco, CA for petitioner Google LLC. Also represented by LUIS GABRIEL HOYOS, ERIN MEYER, RYLEE KERCHER OLM, DAVID JUSTIN ROSEN, DAVID SILBERT.

ALFRED ROSS FABRICANT, Fabricant LLP, Rye, NY, for respondent Jawbone Innovations, LLC. Also represented by RICHARD MATTHEW COWELL, PETER LAMBRIANAKOS, VINCENT J. RUBINO, III.

---

Before LOURIE, TARANTO, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

**O R D E R**

Google LLC ("Google") petitions for a writ of mandamus directing the United States District Court for the Western District of Texas to vacate its order denying Google's motion to transfer and to transfer the case to the United States District Court for the Northern District of California. Jawbone Innovations, LLC ("Jawbone") opposes. For the following reasons, we grant the petition and direct transfer.

I

Jawbone filed this patent infringement suit against Google in the Western District of Texas ("Western District") in September 2021, four months after being assigned ownership of the nine asserted patents and seven months after being incorporated in Texas. Appx60, Appx63, Appx909. Jawbone also rents space in Waco, Texas to store documents relating to the patents, and from which it conducts some distribution and sales activities, Appx486-87, but no Jawbone personnel work in that or any other location in the Western District, Appx918.

Google moved under 28 U.S.C. § 1404(a) to transfer the action to the Northern District of California ("Northern District"). It argued that: the relevant technical aspects of the accused earbuds, smartphones, speakers, displays, and software products at the center of Jawbone's infringement allegations were researched, designed, and developed at Google's headquarters within the Northern District, Appx15; the technology underlying the asserted patents assigned to Jawbone was likewise developed and prosecuted in Northern California (by a company that developed and sold "Jawbone" products and once bore a "Jawbone" name), Appx15, Appx433, Appx958; witnesses and sources of proof (including prototypes of the accused products, Google's key personnel with knowledge about the technical and financial issues, and four of the six named inventors) were primarily located in the Northern District, Appx2, Appx5; and

no witnesses or sources of proof were located in the Western District, Appx2.

The district court denied the motion. The court acknowledged that the Northern District had a comparative advantage in being able to compel unwilling witnesses and in being more convenient for more willing witnesses. Appx933. On the other hand, the court also determined that the court congestion factor and judicial economy considerations weighed against transfer. Appx934. The remaining factors, the court determined, favored neither forum. *Id.* On balance, the court concluded that Google had failed to demonstrate that the Northern District was clearly more convenient and, accordingly, denied transfer. *Id.*

II

Our limited task on mandamus is to determine whether the district court clearly abused its discretion. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021). Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district court where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. We follow regional circuit standards governing motions under § 1404(a). *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The United States Court of Appeals for the Fifth Circuit has made clear that while "the decision of whether to transfer a case is committed to the district court's discretion," *In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022), when a movant "demonstrates that the transferee venue is clearly more convenient" the district court "should" grant transfer, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *see also Planned Parenthood*, 52 F.4th at 629 ("The ultimate inquiry is whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.'") (quoting *Volkswagen*, 545 F.3d at 315).

The Fifth Circuit has identified "private and public interest factors," which are "not necessarily exhaustive or exclusive," to be evaluated in connection with determining whether a case should be transferred. *Planned Parenthood*, 52 F.4th at 630 (internal quotation marks omitted). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

The district court found that two of these factors weigh against transfer (one only slightly), two weigh in favor of transfer (one only slightly), and the remaining four factors are neutral. Appx933-34. Notwithstanding our deferential standard of review, and the fact that assessing the weight given to any of the factors – as well as their overall balance – is within the "sound discretion of the trial court based not on per se rules but rather on an individualized, case-by-case consideration of convenience and fairness," *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (internal quotation marks omitted), we conclude that the district court clearly abused its discretion. As we discuss below, once the clear errors are corrected, (a) the two factors the district court found weigh against transfer are, at best for Jawbone, neutral; (b) the factor the district court found weighs only slightly in favor of transfer actually weighs heavily in favor of transfer; (c) two factors the district court found to be neutral actually favor transfer; and (d) the remaining three factors either favor transfer or are neutral, as the district court found.

A

The district court held that the factor considering "all other practical problems that make trial of a case easy, expeditious, and inexpensive" weighs against transfer. This was clearly erroneous. The only reason the court gave for this determination was Jawbone's co-pending case against Apple in the Western District of Texas. Appx929-30. However, Apple, like Google, moved to transfer to the Northern District of California.[1] Moreover, at the time Google's motion was pending, another case involving the same patents, *Jawbone v. Amazon*, had been ordered transferred from the Eastern District of Texas to the Northern District of California. Appx891-908. Consequently, whatever efficiencies would be had by combining cases asserting the same patents against different defendants with different accused products are as likely to be enjoyed by transferring this case as not. Hence, even before the recent dismissal of the Apple case, *see supra* n.1, this factor is, at best for Jawbone, neutral. As importantly, judicial economy considerations could not undermine the clear case for transfer in light of the imbalance on the other factors. *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (noting that "incremental gains" in judicial economy were not sufficient

---

[1] The district court discounted Apple's pending motion to transfer on the ground that it had ordered the parties in that case to go through full fact discovery and then re-brief the transfer motion. Appx929-30. However, in the *Apple* case, the district court subsequently vacated its order in light of our decision in *In re Apple*, 52 F.4th 1360 (Fed. Cir. 2022); stayed proceedings pending its resolution of Apple's transfer motion, *Jawbone Innovations, LLC v. Apple Inc.*, No. 6:21-cv-00984-ADA (W.D. Tex. Nov. 8, 2022); and subsequently granted those parties' joint motion to dismiss with prejudice, *Jawbone*, No. 6:21-cv-00984-ADA (W.D. Tex. Dec. 23, 2022).

"to justify overriding the inconvenience to the parties and witnesses"); *Planned Parenthood*, 52 F.4th at 632 n.5 (declining to give significant weight to possibility of co-pending cases when those cases "involve[d] different parties[] [and] different claims," "although some factual issues may be similar").

The district court held that the "administrative difficulties flowing from court congestion" factor weighed slightly against transfer. While we defer to the district court's assessment of the average time to trial data, *see Planned Parenthood*, 52 F.4th at 631; *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) ("We do not disturb the district court's suggestion that it could dispose of the case more quickly than if the case was transferred to the Northern District of California."), in this case it was a clear abuse of discretion to accord this factor any weight, *see Juniper*, 14 F.4th at 1322 (discounting time-to-trial difference because there was no "need of a quick resolution" where patentee lacked "position in the market . . . being threatened"). It appears undisputed that Jawbone (unlike its predecessor owners of the patents) is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference. Nor does the record reveal any other basis on which to accord significance to whatever greater speed the district court speculates it could reach trial as compared to Northern California. *See Genentech*, 566 F.3d at 1347 (describing this factor as "most speculative"). This factor, then, is neutral.

B

The district court held that the "cost of attendance for willing witnesses" factor weighed only slightly in favor of transfer. This was clearly erroneous as this factor weighs heavily in favor of transfer.

It is evident that the Northern District of California would be more convenient for potential witnesses. In addition to several third-party witnesses located in the Northern District, Google submitted a sworn declaration from its Discovery and Litigation Support team Project Manager, Michelle True, which identified Google employees in the Northern District who were part of the product and engineering teams with technical knowledge of the accused functionality, employees who authored articles that were discussed in the complaint, and employees knowledgeable about Google's marketing of the accused products and finances. Appx21-28.

The court weighed this factor only slightly in favor of transfer after finding Ms. True's declaration was unreliable, Appx920, but the steep discounting of this factor is unreasonable on the record. Ms. True's investigation revealed at least eleven Google employees in the Northern District that the district court credited as potential witnesses, Appx916, and found no Google employee in the Western District of Texas who worked on what Google understood to be the accused features, Appx21-23, Appx25, Appx27. The district court faulted Ms. True for not addressing three of Google's Texas employees that Jawbone identified as having potentially relevant knowledge based on Jawbone's review of their online profiles, but Google provided sworn, unequivocal deposition testimony from each employee explaining that none of them work on the accused features. Even if these three individuals had relevant and material information, the court found that eleven other potential witnesses reside in the Northern District.[2] On this record,

[2] The district court also discounted the declaration on the ground that Ms. True was not an engineer who had personally worked on the design, development, or testing of the accused products. Appx914 n.2. But neither the court nor Jawbone cited any authority that would impose

the district court should have weighed this factor firmly (not slightly) in favor of transfer.

C

The district court held that the "local interest" factor was neutral, but its conclusion was an abuse of discretion as it gave significant weight to Jawbone's office and corporate residence in Waco. Appx933. The court recognized that Jawbone "established itself in Waco less than one year before it filed this lawsuit," *id.*, and "none of its personnel are here in this District," Appx918. Jawbone incorporated in Texas in February 2021 and established an office in Waco in August 2021, just one month before it filed suit against Google. Appx486. Jawbone conducts no activities from Texas that relate to the accused technology. Appx877-78. Under such circumstances, Jawbone has no meaningful presence in the Western District of Texas that should be given significant, let alone, comparable weight to the facts tying the litigation to the California forum, where both the patented and accused technology were developed. *See Juniper*, 14 F.4th at 1320-21 ("[L]ittle or no weight should be accorded to a party's 'recent and ephemeral'

---

such a requirement, and there is no reason to doubt the adequacy of Ms. True's investigation regarding the eleven potential witnesses in the Northern District. That is so even if the district court could legitimately fault Ms. True's statement that she was "not aware of any current Google employees working on the Accused Features and the Accused Products," in light of Google's seeming concession that some of its Texas employees work on aspects of the accused products (though not, says Google, the accused features). Appx27, Appx914 n.2. The statement reveals, at most, a partial gap in Ms. True's knowledge, but no basis for substantially discounting the imbalanced nature of where the potential Google witnesses are located.

presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation."); *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (giving no weight to location of office in transferor forum where plaintiff had no personnel but merely retained documents from prior litigation there).

By contrast, the events giving rise to this patent infringement suit clearly have a particularized connection with Northern California. The patented technology was invented in, and the patents prosecuted from, that forum. Additionally, the district court found that Google developed the accused products in the Northern District, notwithstanding Google's separate office in Austin. Appx932; *see also Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) ("[T]he local interest in having localized interests decided at home, 'most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit.'") (quoting *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)). It was clear error not to find that the local interest factor favors transfer.

The district court found the "relative ease of access to sources of proof" factor was neutral. This was clearly erroneous as this factor favors transfer. Physical prototypes of the accused products have been identified only as in the Northern District of California, Appx21, Appx23, Appx25, and four of the six inventors reside in the Northern District, as do the prosecuting attorneys, relevant former Google employees, and third-party companies that provide certain accused functionality for the accused products, Appx22, Appx24. The Northern District would clearly provide easier access to sources of proof, including documents, and be more convenient for potential non-party witnesses.

D

We will address the remaining factors briefly. The district court correctly recognized that the "availability of compulsory process to secure the attendance of witnesses" favors transfer, as the Northern District could compel multiple potential witnesses to appear at trial while no likely non-party witnesses have been identified whom the Western District has authority to compel. We agree with the district court, and both parties, that the "familiarity of the forum with the law that will govern the case" and the "problems associated with conflicts of law" are neutral.

III

In sum, on the record before us, four factors favor transfer and four factors are neutral. No factor weighs against transfer. The center of gravity of this action, focusing on the *Volkswagen* factors and the overriding convenience inquiry, is clearly in the Northern District of California, not in the Western District of Texas. The district court clearly erred in finding otherwise and its decision to deny Google's motion to transfer was a clear abuse of discretion.

Accordingly,

IT IS ORDERED THAT:

The petition is granted. The district court's order denying Google's motion to transfer is vacated, and the district court is directed to grant the transfer motion.

FOR THE COURT

| | |
|---|---|
| February 1, 2023 | /s/ Peter R. Marksteiner |
| Date | Peter R. Marksteiner<br>Clerk of Court |